**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMY TOMPKINS, | : | CIVIL NO: **1:13-CV-02793** |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| CAROLYN W. COLVIN, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

## I.   PROCEDURAL HISTORY.

Plaintiff, Amy Tompkins, filed, through counsel, a Complaint on November 14, 2013, appealing the final decision denying her application for Supplemental Security Income ("SSI") payments, under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381, *et seq*. (Doc. 1). We have jurisdiction over this case pursuant to 42 U.S.C. §1383(c)(3), which incorporates 42 U.S.C. §405(g) by reference.

Plaintiff, born on August 4, 1972, protectively filed her application for SSI on April 30, 2008, alleging disability due to back pain, and Hepatitis C. Plaintiff alleges that she became unable to work due to her conditions on March 1, 2004, but later amended her alleged onset date to April 30, 2008. Plaintiff was 35 years old on the date her application was filed, which makes her a "younger person" as defined by 20 C.F.R. §416.963(c).[1]

Plaintiff's application for SSI payments was initially denied on September 16, 2008. The

---

[1]Under the Social Security Regulations, the ALJ will determine whether an individual is a "younger person"(under age 50), "person closely approaching advanced age" (50-54), or "person of advanced age"(55 or older) based on their chronological age to determine the impact his or her age has upon the ability to adjust to other work. 20 C.F.R. §416.963. If a claimant is a "younger person," his or her age is generally considered to have no serious affect on the ability to adjust to other work. 20 C.F.R. §416.963(c). However, a "younger person" between the ages of 45 and 49 is considered to be more limited in his or her ability to adjust to other work than a claimant who has not yet attained age 45. *Id*. If the claimant is a "person closely approaching advanced age," his or her age may seriously affect the ability to adjust to other work. 20 C.F.R. §416.963(d). If the claimant is a "person of advanced age" his or her age may significantly affect the ability to adjust to other work. 20 C.F.R. §416.963(e).

Plaintiff filed a written request for a hearing.  On May 17, 2010, a video hearing was held before Administrative Law Judge ("ALJ") Scott C. Firestone.  Plaintiff appeared in Binghamton, New York, and the ALJ presided from Jericho, New York.  On June 11, 2010, the ALJ issued a decision denying Plaintiff's application for SSI payments after finding that Plaintiff was not under a disability within the meaning of the Act from April 1, 2008, her alleged disability onset date, through the date of his decision.

The Plaintiff appealed the ALJ's June 11, 2010, decision to the Appeals Council.  On September 23, 2011, the Appeals Council remanded Plaintiff's case back to the ALJ for further consideration of Plaintiff's claim for benefits. In its order the Appeals Council directed the ALJ to consider the third-party opinion of Plaintiff's sister-in-law, Sharlene J. Tompkins.  (TR 103).

Pursuant to the order of the Appeals Council remanding the June 11, 2010, decision, Plaintiff appeared and testified before a second ALJ, F. Patrick Flanagan, on September 2, 2012. On September 7, 2012, ALJ Flanagan issued a decision denying Plaintiff's claim for benefits. On September 19, 2012, Plaintiff appealed ALJ Flanagan's decision  to the Appeals Council. The Appeals Council denied Plaintiff's request for review, which makes the ALJ's September 7, 2012, decision the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. §405(g).  20 C.F.R. §416.1481.

In the Commissioner's final decision, the ALJ proceeded through each step of the five-step sequential evaluation process.[2]   After completing his analysis, the ALJ reached the

---

[2]A five-step evaluation process is used to determine if a person is eligible for benefits under the Act by reason of disability. *See* 20 C.F.R. § 416.920.  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 416.920.  If the Commissioner finds that a claimant is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 416.920.   Moreover, between steps three and four of this process, the ALJ must determine the claimant's residual functional capacity ("RFC") as defined by 20 C.F.R. §416.945. 20 C.F.R. §416.920(e).

conclusion that Plaintiff was not under a disability within the meaning of the Act from April 30, 2008, her amended disability onset date, through the date of his decision.

At step one, the ALJ found that Plaintiff may have engaged in substantial gainful activity after her application date.  (TR 13).  Plaintiff stated that she worked part-time as a waitress for approximately two months, until July of 2009, when she was "let go" due to frequent absenteeism as a result of her back impairment.  However, the ALJ resolved this issue in Plaintiff's favor because it was unclear as to whether Plaintiff's earnings for 2009 reached the level of substantial gainful activity. (*Id.*).

At step two, the ALJ found that Plaintiff's impairment due to degenerative disc disease of the lumbar spine was both medically determinable and severe.  (TR 13-14).  The ALJ found that Plaintiff had the medically determinable, but non-severe, impairments of Hepatitis C and a history of polysubstance abuse.  (TR 14).  The ALJ also noted that the record referenced diagnoses of asthma and depression, but found that there were no diagnostic tests or clinical findings to support the existence of these conditions; he found them to be non-medically determinable.  (TR 14).

At step three, the ALJ found that Plaintiff's impairment of degenerative disc disease of the lumbar spine did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (TR 14).

Before continuing on to step four, the ALJ assessed Plaintiff's RFC based on the evidence of record, which included Plaintiff's subjective testimony, objective clinical tests, and medical

---

The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work.  42 U.S.C. §423(d)(5) )(incorporated by 42 U.S.C. §1382c(a)(3)(H)(i)); 20 C.F.R. § 416.912; *Mason v. Shalala*, 994 F.2d 1058, 1064(3d Cir. 1993).  Once the claimant has established at step four that he or she cannot do past relevant work, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her age, education, work experience and RFC.  20 C.F.R. § 416.912(f); *Mason*, 994 F.2d at 1064.

opinions by Plaintiff's treating orthopedist and primary care physician, the report of a consultative examiner commissioned by the Agency, and several lay opinions by Plaintiff's friends and family.  The ALJ found that Plaintiff had the requisite functional capacity to perform a full range of light work as defined in 20 C.F.R. §416.967(b).[3]  (TR 14-17).  The ALJ found that Plaintiff was able to: lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; sit for up to six hours in an eight-hour workday; and stand/walk for up to six hours per eight-hour workday. (TR 14).

At step four, the ALJ found that Plaintiff had no past relevant work.  Thus, the ALJ found in Plaintiff's favor at this step, and proceeded to step five of his evaluation.  (TR 17-18).

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC to perform the full range of light work in order to ascertain whether she was capable of performing a significant number of jobs in the national economy.  (TR 18).  Because he found that Plaintiff's ability to perform light work was not eroded by any additional exertional or non-exertional

---

[3]Under the Social Security Regulations, all occupations are classified as "sedentary work," "light work," "medium work," "heavy work," or "very heavy work." 20 C.F.R. §416.967.  "Sedentary work" is defined by the regulations as work which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).  "Light work" is defined by the regulations as work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).  "Medium work" is defined by the regulations as work which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).  "Heavy work" is defined by the regulations as work which "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."  20 C.F.R. § 416.967(d).  "Very heavy work" is defined by the regulations as work which "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. §416.967(e).

limitations, the ALJ determined that a finding of "not disabled" was directed by Rule 202.20 of the Medical-Vocational guidelines.  (*Id.*).

The Plaintiff then initiated the instant civil action in this Court appealing the final decision of the Commissioner.  (Doc. 1).  The Commissioner filed an Answer to the Complaint on February 20, 2014.  (Doc. 10).  The Commissioner also filed the complete administrative record.  (Doc. 11).  On April 18, 2014, Plaintiff filed a Brief in support of her Complaint.  (Doc. 14).  On May 16, 2014, the Commissioner filed her Brief.   (Doc. 15).  Plaintiff did not file a Reply Brief.  Therefore, this appeal has been fully briefed, and is now ripe for disposition.[4]

For the reasons set forth below, we recommend that this case be **VACATED** and **REMANDED** to the Commissioner for further proceedings.

## II.    STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)*; Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Johnson*, 529 F.3d at 200.  It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

---

[4]Under the Local Rules of Court, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." L.R. 83.40.1.

to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A); *see also*

20 C.F.R. §416.905(a).  Furthermore:

> an individual shall be determined to be under a disability only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if he [or she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 1383c(a)(3)(B); *see also* 20 C.F.R. §416.905(a).

## III.    BACKGROUND.

In 1994, Plaintiff was involved in a motorcycle accident which resulted in a significant

injury to her lumbar spine.  Over a period of two years her symptoms gradually improved with

chiropractic care.  She then remained relatively asymptomatic for approximately ten years, until

the birth of her second child in 2007.  On August 26, 2008, Plaintiff re-injured her back in a

second accident when she was struck by a motor vehicle while crossing the street.

Plaintiff testified that her back impairment caused sharp, and constant, stabbing pain on

the lower right side of her back that radiated down the front of her right thigh.  (TR 67).  She also

reported that she had cartilage breakup and arthritis in both kneecaps.  (*Id.*).  She testified that

she was prescribed Oxycodone, which eased her pain for only "a couple" hours at a time.  (TR

67, 77).  Plaintiff reported that she experienced pain while sitting and standing.  (TR 72-73).  She

stated that she was most comfortable lying down with her feet elevated.  (*Id.*).  She also reported

extreme fatigue secondary to thyroid issues caused by interferon treatments for hepatitis C.  (TR

66).  In September 2009, Plaintiff told her physician that she was unable to lift her daughter, who

weighed eighteen pounds, and reported an inability to lift more than ten pounds.  (TR 449).  At

the hearing, Plaintiff reported an inability to lift more than one half gallon of milk.  (TR 75).

Plaintiff lives alone with her two children, and testified that she experienced both "good

days" and "bad days" in equal measure.  (TR 76).  When she had good days, Plaintiff was able

to perform approximately one half hour of activity before she needed to lie down for one half

hour.  (TR 74-75).  On bad days, Plaintiff reported that she spent roughly three quarters of the day lying down, and was able to perform only fifteen minutes of activity before she needed to rest.  (TR 75).  In June 23, 2008, Plaintiff completed a "Function Report" form.  (TR 251-61).  On this form, Plaintiff reported that she could prepare meals and perform basic household chores, go grocery shopping bi-weekly, and had no problems with personal care.  (*Id.*).  She also reported that she was able to care for her two children with some assistance from family members.  (*Id.*).  At her hearing, Plaintiff also admitted that, on one occasion, she rode a motorcycle subsequent to her application for benefits.  (TR 79).  Her medical records reflect that in January 2011, she reported running on a treadmill.  (TR 672).  At the hearing, however, Plaintiff admitted only that she may have walked on a treadmill.  (TR 78-79).  The Plaintiff also worked as a waitress for at least a few months in 2009; an occupation which required her to lift, bend, and twist. (TR 63).

Plaintiff received two rounds of PEG-interferon and ribavirin treatment for her diagnosed condition of Hepatitis C since her alleged onset date.  Several years prior to beginning interferon treatment, Plaintiff's examination records reflect that she had several thyroid nodules, which were treated by Dr. Howland.  (TR 348, 351, 353).  She also complained of fatigue prior to beginning her first interferon treatment in 2008.  (*Id.*).

Plaintiff's first round of interferon treatment began in April 2008.  After twelve weeks of treatment, Plaintiff reported a decrease of appetite and muscle aches with fatigue surrounding her injection day, but was otherwise doing well.  (TR 423).  After eighteen weeks of treatment, Plaintiff reported some side effects of fatigue, it was also noted that she had some abrasions from a motor vehicle accident.  (TR 422). In November 2008, Plaintiff had a complete hysterectomy.  (TR 421).  Examination records noted that she was anemic, and had two blood transfusions. (*Id.*).  She was also noted to have hypothyroidism and was prescribed supplements.  (*Id.*).  On December 5, 2008, Plaintiff reported that she was feeling well, had no fever or night sweats, and did have some fatigue surrounding the time of injection that lasted for a couple days.  (TR 420).  Plaintiff's examination records from the same date reflect that her Hepatitis C was not

responding to treatment, and in light of her continued anemia, it was recommended that she stop treatment. (*Id.*).

An MRI taken of Plaintiff's lumbar spine on May 5, 2008, revealed disc desiccation and minor central bulging at L4-L5, a left posterior small disc protrusion at L5-S1, minor indentation of the left anterior thecal sac without frank left S1 root compression. (TR 323). There was no specific cause for any right sided root compression, though it was thought that the changes on the MRI could be associated with some pain radiation with pseudo-radiculopathy. (*Id.*).

On August 12, 2008, Plaintiff attended a consultative exam with internist Justine Magurno, M.D., commissioned by the Agency. (TR 384-89). Dr. Magurno diagnosed Hepatitis C (currently on treatment with side effects from medications), lower back pain (most likely disc disease), asthma and history of frequent bronchitis, and history of drug and alcohol abuse (currently in remission). (TR 388). Dr. Magurno opined that Plaintiff's prognosis for Hepatitis C was unknown, for back pain her prognosis was poor, and for asthma her prognosis was good (with treatment). (*Id.*). During the examination, Dr. Magurno observed that Plaintiff had a full range of motion in her cervical spine, limited range of motion in her lumbar spine, and a positive straight leg raise on her right side at twenty degrees. (TR 387). She had a normal gait and could walk on her heels and toes with difficulty. (TR 386). The neurologic exam was normal, except that Plaintiff had only 4/5 muscle strength in her lower right extremity. (TR 387-88). Dr. Magurno also found that Plaintiff had: marked limitations for lifting and carrying; moderate limitations for standing, walking, bending, pushing, and pulling; mild limitations for sitting and squatting; and, no limitations noted for fine motor activities, speech, hearing, and reaching. (TR 388). The ALJ accorded "some weight" to Dr. Magurno's report, noting that the doctor relied solely on Plaintiff's subjective complaints, which he seemed to "uncritically accept as true." (TR 17). The ALJ also noted that the significant limitations identified by Dr. Magurno were inconsistent with the objective evidence of record and Plaintiff's self-reported activities of daily living. (*Id.*). We note that roughly two weeks after this examination, on August 26, 2008, Plaintiff re-injured her back when she was struck by a motor vehicle while crossing the street.

On September 16, 2009, Plaintiff's primary care physician, Svetlana Budman, M.D.,

noted that Plaintiff became permanently disabled on April 19, 2007, on a form completed for the Pennsylvania Department of Public Welfare. (TR 418). The ALJ found that Dr. Budman's September 2009, statement was unsupported by the fact that Plaintiff was to perform physically demanding work as a waitress subsequent to the date of the opinion. (TR 17).

A second MRI of Plaintiff's lumbar spine taken on September 18, 2008, several weeks after she was struck by a motor vehicle, revealed no significant interval changes compared to the MRI of May 5, 2008. (TR 439). An MRI of Plaintiff's cervical spine, performed the same date was unremarkable. (TR 440).

On May 10, 2010, Dr. Budman, completed a medical questionnaire. (TR 496-98). Dr. Budman opined that Plaintiff: required complete freedom to rest frequently, and without restriction, during the workday; would be expected to be absent from work four or more times per month due to her impairment; could sit less than six hours per day, and needed to alternate between sitting and standing; would not be able to stand for two hours per eight-hour workday; and, could lift or carry a maximum of ten pounds for up to three hours per day. (*Id.*). Dr. Budman also opined that Plaintiff's ability to concentrate was mildly impaired, and her ability to sustain work pace was moderately impaired by her condition. (*Id.*). The ALJ accorded "[v]ery little weight" to Dr. Budman's report. (TR 17). He noted that the opinion was "entirely inconsistent" with the objective evidence of record and was unsupported by any treatment notes or clinical findings, the conservative nature of Plaintiff's treatment. (*Id.*).

An x-ray of Plaintiff's lumbar spine taken on October 11, 2010, revealed anterior degenerative spurring of the lower lumbar spine involving L3-L4, L4-L5, and L5-S1 with mild degenerative disc disease at L5-S1. (TR 597).

Plaintiff began her second round of interferon treatments on January 28, 2011. (TR 672). On month after beginning treatment, Plaintiff reported some "manageable" difficulties with fatigue. (TR 671). On May 10, 2011, she reported "generalized fatigue" which was not excessive, and admitted that she was able to do her normal activities with her children. (TR 669). In June 2011, she complained of fatigue, and difficulty sleeping due to muscle aches. (TR 668). In July 2011, she reported feelings of depression and fatigue, which persisted throughout

the remainder of her treatment.  (TR 667).  Plaintiff completed her second round of interferon treatment in March 2012.  (TR 661).

A third MRI of Plaintiff's lumbar spine taken on February 23, 2012, revealed L4-5 and L5-S1 shallow posterior midline disc protrusions and mild bilateral facet arthrosis, without demonstrated morphologic neural impingement.  (TR 591-92).

In March 2012, Plaintiff's orthopedist, Robert S. Mathews, M.D., completed a medical questionnaire.  (TR 617-19).  Dr. Mathews opined that Plaintiff: would require more than one ten-minute rest period per hour; would not be absent from work four or more times per month due to her impairment; could sit for up to thirty minutes at one time, and could sit for a total of two hours per eight-hour workday; could stand or walk for six hours per eight-hour workday; and, could not lift or carry any weight.  (*Id.*).  Dr. Mathews also opined that Plaintiff's ability to concentrate was severely impaired by her condition, but she would be able to sustain work pace.  (*Id.*).  At the request of the ALJ, Dr. Mathews completed a supplemental medical questionnaire in August 2012.  (TR 808).  Dr. Mathews opined that Plaintiff: was expected to be absent from work two or more times per month due to her impairment; could sit for up to two hours at one time, and could sit for a total of six hours per eight-hour workday; could stand up to thirty minutes per eight-hour workday; and, could walk up to thirty minutes per eight-hour workday.  (*Id.*).  The ALJ noted that Dr. Mathews' opinions were internally inconsistent, and that his opinion that Plaintiff could perform no lifting or carrying was entirely inconsistent with the record.  (TR 17).  However, the ALJ credited Dr. Mathews' report to the extent it supported "a preserved ability for functional sitting and standing."  (*Id.*).

## IV.    DISCUSSION.

Plaintiff argues that substantial evidence does not support the ALJ's decision denying her application for benefits.  She contends, among other things, that the ALJ's RFC assessment is unsupported by substantial evidence.  Her argument in this instance is twofold.  First, she asserts that the ALJ improperly discounted the opinions of Drs. Matthews and Budman, and the treatment records of Dr. Desai in violation of the treating physician rule.  Second, she asserts that, in assessing her RFC, the ALJ impermissibly substituted his own medical opinion instead of

relying upon the opinions of qualified medical sources.  The Defendant Commissioner responds that the ALJ's decision is supported by substantial evidence.

"[The District] Court's review is plenary with respect to all questions of law." *Hansford v. Astrue*, 805 F.Supp.2d 140, 143 (W.D.Pa. 2011)(citations omitted).  "With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is 'supported by substantial evidence.'" *Id.*(citations omitted).  "The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record." *Id.*(citation omitted).  Rather, the Court must review the findings of fact and conclusions of the ALJ to determine whether they are supported by substantial evidence.  If the ALJ's findings of fact are supported by substantial evidence, they "shall be conclusive." *Id.*(citations omitted).  Thus, the Court applies a "deferential standard of review." *Id.*(citations omitted).

A claimant's residual functional capacity ("RFC") is defined as "the most [he or she] can still do despite [his or her] limitations."  20 C.F.R. §416.945(a).  In making his or her RFC assessment, the ALJ will consider all of the claimant's medically determinable impairments, including any non-severe impairments. *Id.*  Moreover, the ALJ must consider all of the relevant medical and other evidence of record, including statements by medical sources about what a claimant can still do, and descriptions and observations of a claimant's limitations provided by other persons (i.e. family, neighbors, or friends). *Id.*  However, rarely can a decision be made regarding a claimant's RFC with out an assessment from a physician regarding the functional abilities of a claimant.  *See Doak v. Heckler*, 790 F.2d, 26, 29 (3d Cir. 1986)("No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence.").  The ALJ may not reject or discount evidence for no reason or for the wrong reason, *Morales v. Apfel*, 225 F.3d 310  (3d Cir. 2000), and "is not free to employ [his or ] her own expertise against that of a physician who presents competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999) (*citing Ferguson v. Schweikr,* 765 F.2d 31, 37 (3d Cir. 1985)); *see also Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988)(finding that an

ALJ may not reject medical determinations by substituting his own medical judgments). As two commentators have observed:

> Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination based on those administrative definitions and is reserved to the Commissioner. However, the underlying determination is a medical determination, i.e., that the claimant can lift five, 20, 50, or 100 pounds, and can stand for 30 minutes, two hours, six hours, or eight hours. That determination must be made by a doctor. Once the doctor has determined how long the claimant can sit, stand, or walk, and how much weight the claimant can lift and carry, then the ALJ, with the aid of a vocational expert if necessary, can translate that medical determination into a residual functional capacity determination.

Carolyn A. Kubitschek & John C. Dubin, Social Security Disability Law and Procedure in Federal Courts, §3.47 (2014)(footnotes omitted).

Furthermore, it is axiomatic that an ALJ's RFC assessment be accompanied by a clear and satisfying explanation of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). As observed in *Cotter*,

> There are cogent reasons why an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests. Chief among them is the need for the appellate court to perform its statutory function of judicial review. A statement of reasons of findings also helps to avoid judicial usurpation of administrative functions, assures more careful administrative consideration, and helps the parties plan their cases for judicial review.

*Id.* at 705.

Plaintiff contends that the ALJ's RFC assessment is unsupported by substantial evidence because the ALJ improperly rejected the medical opinions of *all* treating and examining physicians and erroneously substituted his own medical opinion in concluding that Plaintiff had the RFC to perform a full range of light work. Our review of the ALJ's opinion reveals that the ALJ discounted, rather than rejected the medical opinions of Plaintiff's treating sources. Further, we find that the reasons cited by the ALJ for discounting these opinions are proper, and are supported by substantial evidence in the record. Nonetheless, we are still compelled to recommend that this case be remanded, as the ALJ failed to adequately explain and support the basis for his ultimate conclusion that Plaintiff could perform the full range of light work. Neither the medical opinions cited by the ALJ nor Plaintiff's testimony support a finding that she is able to lift twenty pounds or stand and walk for the majority of the day with only the customarily scheduled break periods. Instead the ALJ relied on his own broad conclusions and inferences

that Plaintiff was capable of a full range of light work.[5] "The administrative law judge cannot speculate as to a claimant's residual functional capacity but must have medical evidence, and generally a medical opinion regarding the functional capabilities of the claimant, supporting his determination." *Gormont v. Astrue*, No. 3:11-CV-2145, 2013 WL 791455, at *8 (M.D.Pa. Mar. 4, 2013)(Nealon, J.).

Accordingly, we find that the ALJ's decision that Plaintiff was not disabled is unsupported by substantial evidence. Therefore, pursuant to 42 U.S.C. §405(g), we will recommend that the decision of the Commissioner be **VACATED** and the case be **REMANDED** for further proceedings.

Because we recommend that this case be remanded for further proceedings, we find that it is unnecessary to address Plaintiff's contentions that the ALJ improperly found her diagnosed condition of Hepatitis C to be non-severe at step two, and failed to adequately account for the side effects of Plaintiff's interferon treatments in his RFC assessment.  Such deficiencies, if they exist, can be remedied in a future decision.

---

[5]In her brief, Commissioner points out that a state agency lay reviewer opined that Plaintiff retained the ability to perform light work.  (Doc. 15, p. 6)(*citing* TR 390-95). However, to the extent the Commissioner suggests that the opinion of a state agency lay examiner is substantial evidence supporting the ALJ's decision, we disagree.  There is no evidence that the ALJ relied on, or even considered, this opinion as he failed to reference it at any point in his decision.  On remand the ALJ should address this opinion, and, if he chooses to rely on it he must fully explain his reasons for doing so.

## V.      RECOMMENDATION.

Based upon the foregoing, it is respectfully recommended that the final decision of the Commissioner of Social Security denying Ms. Tompkins' application for Supplemental Security Income benefits be **VACATED** and the case **REMANDED** for further proceedings.  On remand, the Commissioner should be free to further develop the evidentiary record as he deems necessary.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 24, 2014**

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMY TOMPKINS, | : | CIVIL NO: **1:13-CV-02793** |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| CAROLYN W. COLVIN, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated June 24, 2014.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 24, 2014**